

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made as of this __ day of April 2002, by, between, and among the following undersigned parties:

The Plaintiff Federal Deposit Insurance Corporation, in all its capacities ("FDIC"); and Ralph E. Whitmore, Jr. and Nancy W. Whitmore ("Whitmores" or "Defendants").

## RECITALS

WHEREAS:

Prior to February 3, 1989, Alaska Statebank ("the Bank") was a depository institution organized and existing under the laws of Alaska.

On February 3, 1989, the Bank was closed and the FDIC was appointed receiver. The FDIC as receiver succeeded to all rights, titles, powers and privileges of the Bank, including those with respect to its assets. On February 3, 1989, FDIC as receiver sold certain of the Bank's assets to the FDIC in its corporate capacity.

Among the assets to which the FDIC in its corporate capacity succeeded were any and all of the Bank's claims, demands, and causes of actions against its former directors, officers and employees arising from the performance, nonperformance and manner of performance of their respective functions, duties and acts as directors or officers of the Bank.

On January 31, 1992, the FDIC filed a complaint for money damages against defendants Ralph E. Whitmore, Jr., William A. Swain, H. Derrell Smith, Thomas J. Miklautsch, Robert C. Ely and Roger Haxby. The complaint was subsequently amended to add Nancy W. Whitmore as an additional defendant. All defendants except the Whitmores have previously settled with

the FDIC. The FDIC's claims against the Whitmores for damages are now pending in the United States District Court for the District of Alaska in <u>FDIC v. Whitmore</u>, et al., Case No. A92-0060-CV (HRH)) (the "D&O Action"). The Whitmores have denied liability in the D&O Action.

NOW, THEREFORE, without admission of any party as to any issue of law or fact, and in consideration of the promises, undertakings, payments, and releases stated herein, the sufficiency of which consideration is hereby acknowledged, the undersigned parties agree, each with the other, as follows:

### SECTION I: Payment to FDIC

A.  As essential covenants and conditions to this Agreement, the parties agree:

1.  The Whitmores will pay the FDIC $100,000 within 30 days after the execution (as defined in paragraph 6 below) of this Agreement, and $150,000 within 180 days after the execution of this Agreement. Time is of the essence as to each such payment.

2.  The Whitmores will have 180 days from execution of this Agreement in which to market and sell all oil drilling pipe owned by the Whitmores ("the Pipe")or by Global Equipment Ltd. ("Global"). The Whitmores represent and warrant that the Pipe consists of approximately 29,193 feet of oil drilling pipe currently located in Veracruz, Mexico and Singapore with a possible claim on an additional 1354 feet..

3.  If the Whitmores have not fully completed the sale of the Pipe within 180 days after execution of this Agreement, (or, in the FDIC's view have not made adequate progress in selling the Pipe during that time period), the FDIC will have the option

to market the Pipe for sale on commercially reasonable terms and using commercially reasonable procedures; provided, however, that if at the end of the 180 day period after execution of this Agreement, the amount of Pipe not yet sold is less than 10,000 feet, the Whitmores will have an additional 90 days to sell the remaining Pipe. The Whitmores and Global will cooperate fully with the FDIC in marketing and selling the Pipe, and vice versa. Cooperation will include, but is not necessarily limited to, executing all documents necessary for completion of a sale negotiated by the selling party, and taking actions necessary for delivery of the Pipe to a purchaser identified by the selling party. In the event that the FDIC collects payment from a purchaser, the FDIC will pay the Net Sale Proceeds to Global in a timely manner, less the amounts due and payable to the FDIC pursuant to this Agreement.

4. Neither the Whitmores nor any affiliated, associated, or related person or entity will be paid or shall receive any commission, in any form, from the sale of the Pipe.

5. If the Net Sale Proceeds (as defined below) from the sale of the Pipe exceed $700,000, the FDIC shall be paid 50% of the Net Sale Proceeds in excess of $700,000. The parties intend that the FDIC's right to payment of 50% of the Net Sale Proceeds in excess of $700,000 shall be determined without regard to the ownership configuration of the shares of Global. This means that the FDIC will receive a full 50% of the Net Sale Proceeds in excess of $700,000, and not some reduced portion of this amount that reflects, or is intended to reflect, the Whitmores' ownership interest in Global.

6. For purposes of this Agreement, "execution" shall be deemed the date of final Court approval of this Agreement and "termination" shall be deemed the date on which the FDIC's D&O Action is dismissed and the Preliminary Injunction dated March 11, 1992, as modified ("the Preliminary Injunction") is dissolved.

7. Within thirty days after execution, the Whitmores will provide the FDIC with reasonable documentation that the trust created under the Will of Mr. Whitmore's mother:

    i) was established by Mr. Whitmore's mother using her own funds that were not transferred to her, directly or indirectly from the Whitmores; and

    ii) the funds loaned to the Whitmores by the trust were used for attorneys fees, as permitted under the Preliminary Injunction.

8. Within thirty days after execution, the Whitmores will provide reasonable documentation of the loan from the trust to the Whitmores and any security interest in favor of the trust created in conjunction with the loan.

9. The term "Net Sale Proceeds" shall refer to the amount of proceeds remaining after deduction of bona fide third-party, out-of-pocket cost-of-sale items, disclosed to and approved by all parties, including such things as storage, shipping, third-party commissions and physical enhancements, as deemed reasonably necessary to make the Pipe marketable. (This may include purchases of small amounts of Pipe necessary to create a round lot for sale.) No party shall unreasonably withhold consent to or approval of such items.

10. The Whitmores will provide a written report to the FDIC every 60 days regarding all efforts to market the Pipe. This report shall include a list of all expenses incurred as well as any payments or other consideration received from the sale of the Pipe.

11. All proposed enhancements or proposed out-of-pocket selling expenses shall be to legitimate third-parties, in arms-length transactions. Any such enhancements or expenses in excess of $5,000 shall be subject to no less than five business days prior notice to the other party, and shall be subject to approval by the other party, which approval shall not be unreasonably withheld.

12. Prior to the FDIC's approval of this Agreement, the Whitmores shall provide the FDIC with current personal financial statements (unaudited) disclosing all their assets, including assets liquidated or acquired, not previously reported to the FDIC. The Whitmores shall also provide financial statements for Global in a similar fashion. The FDIC will treat the financial statements in a confidential manner consistent with its responsibilities under applicable laws and regulation.

13. The Whitmores will continue to receive living and business expenses (including reasonable legal fees) during the period the Pipe is on the market, as historically permitted under the Preliminary Injunction. There shall be no material change in either the amounts or nature of such items.

14. The party selling the Pipe shall demonstrate to the reasonable satisfaction of the other that the sale is a bona fide, arms length, third party sale. In the event that a proposed sale is for a price below $20 per foot, the party proposing the sale shall

provide no less than five business days notice of any proposed sale before entering into any binding agreement for the sale. The party receiving such notice will provide written approval or disapproval within five business days or be deemed to have approved the sale. Approval shall not be unreasonably withheld.

15. In the event payment in full is not made in a timely manner as provided in paragraph IA(1), the Whitmores agree to entry of a judgment in favor of the FDIC in the amount of $250,000.00, less amounts already paid ("the Judgment") In that event, the FDIC retains its right under this Agreement to payment from the Net Sale Proceeds, as follows: the full amount (100%) of the Net Sale Proceeds shall be applied first to satisfy the Judgment, plus post-judgment interest; after the Judgment has been fully satisfied, the FDIC will be paid 50% of the Net Sale Proceeds in excess of $700,000, as provided herein.

16. Within thirty days of being approved and signed by the FDIC, this Agreement will be submitted by both parties for review and approval by the Court. The Court will retain jurisdiction over the Agreement until it terminates.

17. Upon complete performance of all obligations under this Agreement, including the final sale of all of the Pipe and payment to the FDIC of all amounts due under this Agreement:

   a. the D&O Action will be dismissed with prejudice, with each party to bear its own costs and attorneys' fees; and

   b. the Preliminary Injunction shall be dissolved; and

   c. Mr. Whitmore may move the Court for modification of the restitution order in

United States v. Whitmore to deem his restitution obligation satisfied by virtue of performance of the obligations set forth in this Agreement. While it is understood that the FDIC cannot bind the United States Attorney or the Court, the FDIC agrees not to object or seek to prevent the granting of such a motion, and Mr. Whitmore may represent to the Court that the FDIC does not object to an order granting such a motion. Mr. Whitmore may advise the Court of the terms of this Agreement after he has agreed to and signed the Agreement.

18. All payments due to the FDIC pursuant to this Agreement shall be delivered to the FDIC by direct wire transfer, into an account designated by the FDIC.

B. As essential terms and conditions to this Agreement, the parties agree:

1. Paragraph IA(11) (notice of enhancements) and Paragraph IA(14) (notice of sale below $20 per foot) shall both be subject to the following modified procedure in the event that the Whitmores reasonably and in good faith determine that there is an exigent need for immediate approval of an enhancement or sale in order to facilitate a sale on favorable terms. In such event, the Whitmores shall give telephone and fax notice of the proposed sale or enhancement to Mr. Rich Romero at (Tel.) (202)898-8562 and (Fax) (202) 898-8912. Such notice shall contain all information reasonably available to the Whitmores, regarding the proposed transaction such that the FDIC can reasonably evaluate the transaction. In such circumstance, the FDIC shall respond by telephone and fax at (Tel.) 310-823-2073 and (Fax) 310-823-8840 instead of the time periods set forth in Paragraphs IA(11) and IA(14).

Exhibit A
Page 7 of 15

2. Paragraphs IA(11) and IA(14) shall also be subject to the following condition: In the event that a sale or enhancement is determined not to be a "bona fide" or "legitimate" "arms length, third party" transaction as referenced in said paragraphs, then the selling or enhancing party shall forfeit so much of its own Net Proceeds as is represented by the fair market value of the transaction if the transaction had been to such a "bona fide" or "legitimate" "arms length third party."

3. The Whitmores (or Global) may use proceeds of sale for the sole purpose of paying for enhancements as permitted hereunder, or for the purpose of paying the FDIC the amounts due hereunder. If the Whitmores or Global undertake to borrow from any third party using the Pipe as collateral or source of repayment, the Whitmores shall provide the FDIC with no less than five days written notice of the puposes for which the borrowed funds will be used, the amount to be borrowed, the terms of the borrowing and the identity of the lender and shall be subject to approval by the FDIC, which approval shall not be unreasonably withheld.. The Whitmores shall not represent to any potential third-party lender, directly or indirectly, that the FDIC bears any responsibility for repayment of any amount borrowed, which shall be the exclusive obligation of the Whitmores. The Whitmores shall not represent to any potential third-party lender, directly or indirectly, that the FDIC desires that any loan be made or that the FDIC in any manner approves of the credit worthiness of the borrower or the transaction.

4. In the event that 6,000 or fewer feet of Pipe are remaining after the expiration of an additional ninety days, a calculation will be made by multiplying the number that is fifty percent of the remaining footage of Pipe by the sum of $15 <u>per foot</u>, provided however that such price per foot is not commercially unreasonable in all of the circumstances at the time. The parties shall, if necessary, adjust the price per foot upward or downward for purposes of making this calculation depending upon market conditions at the time. If the product of that calculation, when added to the amounts representing pipe already sold does not exceed the sum of $700,000.00, so that the FDIC would not be entitled to additional payment, then this Agreement shall be deemed satisfied as if "all remaining funds" have been paid to the FDIC and the Agreement shall then be terminated as provided for herein. In the event the product of the calculation demonstrates that the FDIC would be entitled to additional payments if the remaining pipe were sold at $15 per foot (or the price per foot ultimately arrived at), then the Whitmores shall have the option of either paying the FDIC the sum to which it would be so entitled, and taking title to the remaining pipe, or assigning half of the Whitmore's own interest in the remaining pipe to the FDIC. This Agreement shall thereafter terminate.

## SECTION II: Releases

A. <u>Release of the Whitmores by FDIC.</u>

Effective upon termination and dismissal as described in SECTION I above, and except as provided in PARAGRAPH II.D. below, the FDIC, for itself and its successors and assigns, hereby releases and discharges each of the Whitmores and their respective affiliates, heirs, executors, administrators, representatives, successors and assigns, from any and all claims, demands, obligations, damages, actions, and causes of action, direct or indirect, in law or in equity, belonging to the FDIC, that arise from or relate to, the performance, nonperformance, or manner of performance of the Whitmores' respective functions, duties and actions as officers and/or directors of the Bank, including without limitation the causes of action alleged in the D&O Action.

B.  Release of FDIC by the Whitmores.

Effective simultaneously with the release granted in PARAGRAPH II.A. above, the Whitmores, on behalf of themselves individually, and their respective affiliates, heirs, executors, administrators, agents, representatives, successors and assigns, hereby release and discharge FDIC, and its employees, officers, directors, representatives, successors and assigns, from any and all claims, demands, obligations, damages, actions, and causes of action, direct or indirect, in law or in equity, that arise from or relate to, the Bank or to the performance, nonperformance, or manner of performance of the Whitmores' respective functions, duties and actions as officers and/or directors of the Bank including without limitation to the causes of action, counter-claims or cross-claims alleged in the D&O Action.

C.  Release by Whitmores of Other Defendants.

Effective simultaneously with the releases granted in Paragraph II.B. above, and to the extent the Whitmores have been effectively released by the other defendants, and only to that extent, the Whitmores, and their respective heirs, executors, administrators, representatives, successors and assigns, hereby release and discharge each other and any other parties who previously settled their potential liabilities in the D&O Action from any and all claims, demands, obligations, damages, actions, and causes of action, direct or indirect, in law or in equity, that arise from or relate to the performance, nonperformance, or manner of performance of their respective functions, duties and actions as officers and/or directors of the Bank including without limitation the causes of action alleged in the D&O Action.

D. <u>Express Reservations From Releases By FDIC.</u>

1. Notwithstanding any other provision, by this Agreement, the FDIC does not release, and expressly preserves fully and to the same extent as if the Agreement had not been executed, any claims or causes of action:

a. against the Whitmores or any other person or entity for liability, if any, incurred as the maker, endorser or guarantor of any promissory note or indebtedness payable or owed by them to the FDIC, the Bank, other financial institutions, or any other person or entity, including without limitation any claims acquired by FDIC as successor in interest to the Bank or any person or entity other than Bank. The FDIC and the Whitmores represent and warrant that they are unaware of any such instruments or claims;

b. against any person or entity not expressly released in this Agreement; and

c. which are not expressly released in Paragraphs II.A.

2. Notwithstanding any other provision, nothing in this Agreement shall be construed or interpreted as limiting, waiving, releasing or compromising the jurisdiction and authority of the FDIC in the exercise of its supervisory or regulatory authority or to diminish its ability to institute administrative enforcement proceedings seeking removal, prohibition or any other administrative enforcement action which may arise by operation of law, rule or regulation.

3. Notwithstanding any other provision, this Agreement does not purport to waive, or intend to waive, any claims which could be brought by the United States through either the Department of Justice, the United States Attorney's Office for the District of Alaska or any other federal judicial district. In addition, the FDIC reserves its right to court-ordered restitution pursuant to the relevant provisions of the Victim and Witness Protection Act, 18 U.S.C. § 3663, et seq., subject to the terms of paragraph IA (17) of this Agreement.

### SECTION III: Waiver of Dividends

To the extent, if any, that the Whitmores are or were shareholders of the Bank and by virtue thereof are or may have been entitled to a dividend, payment, or other prorata distribution upon resolution of the receivership of the Bank, they hereby knowingly assign to the FDIC any and all rights, titles and interest in and to any and all such dividends, payments or other pro rata distributions. The FDIC represents that no such dividends or payments are due.

### SECTION IV: Representations and Acknowledgements

A.   <u>No Admission of Liability</u>.  The undersigned parties each acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed claims, and that this Agreement is not an admission or evidence of liability by any of them regarding any claim.

B.  <u>Representations Regarding Extent of Assets</u>. The FDIC has relied upon the Whitmore's personal financial statement, the financial statement of Global (as referenced herein) and the periodic reports submitted by the Whitmores pursuant to the Asset Freeze Order (referred to collectively hereafter as Whitmore Financial Reports). The Whitmores represent that the Whitmore Financial Reports relied upon by the FDIC have fully and fairly disclosed all of the Whitmore's assets and transactions as required to be disclosed under the Asset Freeze Order and this Agreement. To the extent that the Whitmore Financial Reports have been materially inaccurate by knowingly, recklessly or in a grossly negligent fashion under-reporting an asset's value by 15% or more or failing inappropriately to list an asset or transaction (herein collectively referred to as the "Undisclosed Assets"), the Whitmores hereby assign and convey without any warranty whatsoever to the FDIC any and all rights, titles and interest in and to the Undisclosed Assets, if any. The FDIC shall enforce its rights hereunder by providing written, certified mail notice to the Whitmores of its contentions. The Whitmores shall have sixty (60) days from actual receipt of such notice to file a complaint for Declaratory Relief in an appropriate United States District Court disputing the FDIC's contentions. To the extent Undisclosed Assets are determined by final Court order to exist, the Whitmores shall execute such documents as are reasonably necessary to effectuate the transfer of any such Undisclosed Asset(s) to the FDIC. The Whitmores agree that the obligation to execute the transfers described above shall be specifically enforceable and agree not to contest the FDIC's right to seek such Order from the Court, subject, however, to the unrestricted right of the Whitmores to dispute that such asset is an Undisclosed Asset. The forgoing shall be the FDIC's sole and exclusive remedy against the Whitmores in the event an ownership interest by the Whitmores in the Undisclosed Assets is

determined to exist, provided, however, that should the Whitmores transfer such asset(s), the FDIC shall be entitled to the proceeds received therefrom and the Whitmores shall hold such proceeds as a constructive trustee for the benefit of the FDIC.

C.   Execution in Counterparts.  This Agreement may be signed in counterparts by one or more of the parties named herein and all such counterparts when so signed shall together constitute the final Agreement, as if one document had been signed by all parties hereto; and each such counterpart, upon signature and delivery, shall be deemed a complete original, binding the party or parties subscribed thereto upon the execution by all parties to this Agreement.

D.   Binding Effect.  Each of the undersigned persons represents and warrants that they are a party hereto or are authorized to sign this Agreement on behalf of the respective party, and that they have the full power and authority to bind such party to each and every provision of this Agreement.  This Agreement shall be binding upon and inure to the benefit of the undersigned parties and their respective heirs, executors, administrators, representatives, successors and assigns.

E.   Choice of Law.  This Agreement shall be interpreted, construed and enforced according to applicable federal law, or in its absence, the laws of the State of Alaska.

F.   Entire Agreement and Amendments.  This Agreement constitutes the entire agreement and understanding between and among the undersigned parties concerning the matters set forth herein.  This Agreement may not be amended or modified except by another written instrument signed by the party or parties to be bound thereby, or by their respective authorized attorney(s) or other representative(s).

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

FEDERAL DEPOSIT INSURANCE CORPORATION

Date: _____   BY: _Toy Ahrens_
TITLE: _Senior Counsel_
Print Name: _Toy Ahrens_

Date: 4/24/02   _Ralph E. Whitmore Jr._   _Ralph E. Whitmore Jr._
Ralph E. Whitmore, Jr.   Global Equipment Ltd*

Date: 4/24/02   _Nancy W Whitmore_
Nancy W. Whitmore

*Global Equipment LTD is a signatory to this Agreement for the purpose of giving and benefiting from the mutual releases contained herein and, in consideration thereof, shall cooperate in good faith in facilitating such transactions.