James N. Leik
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561
(907) 276-3108 (Facsimile)
jleik@perkinscoie.com

Attorneys for Plaintiff
Federal Deposit Insurance Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity as an instrumentality and agency of the United States,<br><br>Plaintiff,<br><br>v.<br><br>RALPH E. WHITMORE, JR., et al.,<br><br>Defendants. | Case No. A92-060 CV (HRH) |

**FDIC'S OPPOSITION TO WHITMORE'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Mr. Whitmore's motion asks the Court to determine his remaining obligations under the Settlement Agreement.[1]

---

[1] The FDIC has made efforts to resolve the dispute. The FDIC's lawyer met with Mr. Whitmore's lawyer on February 21. The FDIC made a settlement proposal on March 6. Since then, the parties have exchanged further proposals for settlement, but as of this date those negotiations have not produced an agreement.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

FDIC's OPPOSITION TO
WHITMORE MOTION TO ENFORCE        - 1 -        [10390-0020-000000/AA060760.012]

Mr. Whitmore argues that he owes the FDIC only $100,000, because various expenses lowered his net income from drilling pipe sales below the $700,000 threshold at which he owes the FDIC more money. But he has not provided the FDIC or the Court with adequate information to support the claimed expenses (except for three categories of expense that the FDIC does not dispute, as discussed below). Thus, the Court does not have a basis for declaring that Mr. Whitmore's obligations are limited to $100,000, as he argues.

## I.   SUMMARY OF SETTLEMENT AGREEMENT

Under the Settlement Agreement, the FDIC is entitled to payment of an additional $100,000. This obligation is undisputed. See Whitmore Ex. C and Whitmore's proposed Order.

The FDIC is also entitled to payment of half of the "Net Sale Proceeds" generated from sale of the drilling pipe, in excess of $700,000. Agreement at 3, ¶ 5. The term "Net Sale Proceeds" is defined in the Agreement:

> The term "Net Sale Proceeds" shall refer to the amount of proceeds remaining after deduction of bona fide third-party, out-of-pocket cost-of-sale items, disclosed to and approved by all parties, including such things as storage, shipping, third-party commissions and physical enhancements, as deemed reasonably necessary to make the Pipe marketable.

Agreement at 4, ¶ 9. The Agreement also specifies that "[a]ll proposed enhancements or proposed out-of-pocket selling expenses shall be to legitimate third-parties, in arms-length transactions. Any such enhancements or expenses in excess of $5,000 shall be subject to no less than five business days prior notice to the other party, and shall be subject to approval by the other party, which approval shall not be unreasonably withheld." Agreement at 5, ¶ 11.

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

The gross amount generated by sale of the drilling pipe was $935,422.[2] This amount must be reduced by "cost-of-sale" items to arrive at a net figure. If the net amount exceeds $700,000, the FDIC gets half of the amount over $700,000. Thus, if the "cost of sale" items are $235,422 or more, Whitmore does not owe the FDIC any money from the sale proceeds—he just owes the $100,000. If the "cost of sale" items are under $235,422, Whitmore owes the FDIC half of the excess over $700,000 (in addition to the $100,000).

## II.    "COSTS OF SALE"

In his February 3, 2006 letter, Whitmore claims 12 categories of deductions from the gross sale price as "costs of sale," totaling $366,154. Whitmore Ex. E.

The FDIC is satisfied that three items on the Whitmores' list of expenses are legitimate "costs of sale." These items are:

| | |
|---|---|
| Pipe restoration | $14,511.50 |
| Storage in Singapore | $17,612.72 |
| Advertising (Tradequip) | $  5,331.00 |
| TOTAL | $37,455.22 |

Whitmore has not demonstrated that any of the other items listed in his letter are costs of sale, as defined in the Agreement. The largest item claimed as a "cost of sale" is the Whitmores' "business and living expenses" of $192,000. The Whitmores' living expenses are clearly not a "cost of sale." Personal living expenses are not expenses "reasonably necessary to make the Pipe marketable."

---

[2] Whitmore Ex. E at 1.

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

FDIC's OPPOSITION TO
WHITMORE MOTION TO ENFORCE          - 3 -                    [10390-0020-000000/AA060760.012]

Unspecified "business expenses" are also not a cost of sale. Costs of sale must be specifically attributed to the pipe sale, and do not include general "business expenses."

In its response to Mr. Whitmore's October 11, 2005 letter, the FDIC asked him to provide detailed information about the "cost of sale" deductions he claims.[3] He complied with respect to the first three items, as described above. As to the rest, he stated conclusory, one or two-word descriptions and the amount claimed. His motion suffers from the same deficiency. In support of his motion, Whitmore has not provided any details or any documentary support for the other expenses that he listed as "costs of sale." To be specific:

| EXPENSE CLAIMED | DISCUSSION |
| --- | --- |
| Accounting (Standbridge) $2000 | Mr. Whitmore submitted a copy of a $2000 bill from his accountant. Whitmore Ex. E at p. 16. The bill states that the $2000 bill was for preparing personal and corporate tax returns. This is not a cost of selling the pipe. |
| Legal (Proskauer Rose) $55,927.99 | Mr. Whitmore provided a statement that gives the amounts billed by his lawyers from February 2002 to February 2003. Whitmore Ex. E at p. 17. There is no information regarding the nature of the services provided by the lawyers. There is no basis for concluding that the bills had any relationship to the pipe sales. These lawyers represented Mr. Whitmore in his criminal case, and in negotiating the settlement agreement with the FDIC. Their fees may relate to those matters, and not to any work done to sell the pipe. Notably, the invoices are dated April 2002 through February 2003. The pipe sales took place in **2005**, so it seems unlikely that these legal bills are directly related to the pipe sales transactions. |

---

[3] Whitmore Ex. D at p. 2.

WHITMORE MOTION TO ENFORCE        - 4 -        [10390-0020-000000/AA060760.012]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

| EXPENSE CLAIMED | DISCUSSION |
|---|---|
| Additional Accounting Fees<br>$2131.05 | The Whitmores have not produced any bills or provided any support for concluding that these fees were incurred in connection with the pipe sales. |
| Travel<br>$8340.47 | The Whitmores have not described the travel expenses and have not provided any information to support the conclusion that the travel expenses were incurred for the purpose of selling the pipe. |
| Routine Office Expenses<br>$19,270.81 | The Whitmores have not provided any information about these expenses, or any relationship they have to the pipe sale. |
| Storage<br>$33,774.05 | The FDIC did not contest a $17,612 bill for pipe storage in Singapore, described above. But there is no documentation to support this additional claim. It is impossible to tell what was stored, or where, or how long. Thus, it is not possible to determine if this is a legitimate "cost of sale" item. |
| Additional Legal<br>$11,000 | The Whitmores have not provided any support for this claim. There are no invoices and no descriptions of the legal services provided. It is impossible to tell what legal work was done, or what relationship, if any, it had with the pipe sale. |
| Interest Incurred in Business of Pipe Sales<br>$4214.81 | Again, there is no documentation. There is no indication of who received the interest payment, or why, and no indication of why it should be considered a cost of selling the pipe. |

In addition, Whitmore has not demonstrated that he complied with the prior notice and approval requirements with respect to the above expenditures.[4]

---

[4] Whitmore argues that he included these expenses in monthly reports that he sends to the FDIC. These reports describe payments and disbursements already made. After-the-fact reports of payments are not the same thing as prior notice and approval, as required under the Agreement.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

FDIC's OPPOSITION TO
WHITMORE MOTION TO ENFORCE            - 5 -                [10390-0020-000000/AA060760.012]

Given Whitmore's failure to provide proof that the above-listed expenses are legitimate "costs of sale," and proof that he satisfied the prior notice and approval requirements, the Court could simply deny Whitmore's claims and require him to pay the FDIC one-half of the proceeds in excess of $700,000, without any credit for these unsubstantiated expenses.  Instead, the FDIC suggests the following procedure:  If the Whitmores want to claim any "costs of sale" beyond the three items accepted by the FDIC, they must submit adequate back-up material to show that (1) the items are legitimate "costs of sale" and (2) the Whitmores complied with the prior notice and approval requirements of the Agreement.  Mr. Whitmore can meet this requirement in his reply brief, or the Court can set some other date when this task must be done.  In either event, the FDIC will respond to the Whitmores' supplemental submission within 14 days after receipt.  Then the Court can decide whether to allow the submitted items as credits against the sale proceeds, and can make a final decision regarding the amount due and payable under the Settlement Agreement.

DATED this 24th day of March, 2006.

> **PERKINS COIE LLP**
> Attorneys for Plaintiff
> Federal Deposit Insurance Corporation
>
> By   /s/ James N. Leik
>   James N. Leik
>   Alaska Bar No. 8111109
>   Perkins Coie LLP
>   1029 W. Third Avenue, Suite 300
>   Anchorage, Alaska  99501
>   (907) 279-8561
>   (907) 276-3108 (Facsimile)
>   jleik@perkinscoie.com

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

FDIC's OPPOSITION TO
WHITMORE MOTION TO ENFORCE   - 6 -   [10390-0020-000000/AA060760.012]

I hereby certify that I have served by fax a true and correct copy of the foregoing on Michael R. Spaan, Patton Boggs LLP, 601 West 5th Avenue, Suite 700, Anchorage, Alaska 99501 this 24th day of March, 2006.

/s/
James N. Leik
Alaska Bar No. 8111109

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

FDIC's OPPOSITION TO
WHITMORE MOTION TO ENFORCE       - 7 -              [10390-0020-000000/AA060760.012]